OPINION
{¶ 1} On November 25, 2006, appellant, Ronald G. Dean, Jr. ("Dean"), was arrested for violations of R.C. 4511.19, operating a motor vehicle under the influence of alcohol; R.C. 4513.263, seat belt requirements; and R.C. 4511.33, rules for driving in marked lanes.
 {¶ 2} The matter proceeded to a jury trial on February 15, 2007. On February 16, 2007, the trial court issued a judgment entry stating: *Page 2 
 {¶ 3} "Upon completion of the presentation of evidence and after a reasonable amount of deliberation, the jurors advised the Court that they were deadlocked and unable to reach a verdict. Therefore, the Court declared a mistrial on the count of Operating a Vehicle Under the Influence, ORC 4511.19(A)(1). The Court did not reach a verdict on the charge of marked lanes. These matters shall be reset on the Court's trial docket."
 {¶ 4} Further, the seat belt charge was dismissed.
 {¶ 5} Subsequently, on March 12, 2007, a jury trial was held in the instant matter. At that trial, Sergeant Beaver of the City of Streetsboro Police Department testified that he observed Dean's vehicle make a right-hand turn without first signaling. As he followed Dean's vehicle, Sergeant Beaver noticed the vehicle travel approximately two feet across the white marked lane. After Dean's vehicle returned to its correct lane, Sergeant Beaver then observed Dean's vehicle make an abrupt left turn onto Russell Drive in front of oncoming traffic. At this time, he initiated a traffic stop of Dean's vehicle.
 {¶ 6} Upon approaching Dean's vehicle, Sergeant Beaver requested his license, registration, and proof of insurance. During this exchange with Dean, Sergeant Beaver noticed Dean's speech was slurred, his eyes were glassy and bloodshot, and his breath had an odor of alcohol. Sergeant Beaver asked Dean if he had consumed any alcoholic beverages. Dean replied that he had two drinks after dinner. Sergeant Beaver ordered Dean out of his vehicle and administered three field sobriety tests, including the Horizontal Gaze Nystagmus ("HGN"), the one-legged stand, and the walk-and-turn. Sergeant Beaver testified that Dean failed all three tests. Sergeant Beaver then placed *Page 3 
Dean under arrest for operating a motor vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1). Dean was transported to the Streetsboro Police Department where he refused B.A.C. testing and signed Form 2255.
 {¶ 7} The jury returned a guilty verdict on the OVI charge and the trial court found Dean guilty of the marked lanes violation. For purposes of sentencing, the two counts were merged. The trial court sentenced Dean to 180 days in jail, fined him $1,000, suspended his driver's license for one year, and ordered him to complete an outpatient substance assessment at the Adult Probation Department. The trial court suspended 175 days in jail and $750 of the fine on the conditions that Dean have no alcohol related offenses for two years, pay all fines and costs, complete 12 months of supervised probation, complete 16 hours of community work service, and use ignition interlock for occupational driving privileges. The sentence was stayed pending the instant appeal.
 {¶ 8} Dean's first assignment of error states:
 {¶ 9} "The Defendant was placed in double jeopardy when he was tried by the trial court a second time."
 {¶ 10} In its February 16, 2007 judgment entry, the trial court stated "[t]he court did not reach a verdict on the charge of marked lanes." Dean was retried on March 12, 2007 and was subsequently found guilty. Dean argues that "even if the trial court had declared a mistrial, there would have been no justification as rarely does a judge have the ability to declare a mistrial." We disagree.
 {¶ 11} "Where the trial judgment sua sponte declares a mistrial, double jeopardy does not bar retrial unless the judge's action was instigated by prosecutorial misconduct *Page 4 
designed to provoke a mistrial, or the declaration of a mistrial constituted an abuse of discretion." State v. Glover (1988),35 Ohio St.3d 18, paragraph one of the syllabus. "The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 12} This court, in State v. Johnson (Sept. 24, 1999), 11th Dist. No. 97-T-0227, 1999 Ohio App. LEXIS 4469, at *12-13, stated:
 {¶ 13} "The Supreme Court of Ohio has made the following observation regarding mistrials:
 {¶ 14} `In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. * * * This court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial.' (Citations omitted.) State v. Glover (1988),35 Ohio St.3d 18, 19."
 {¶ 15} We note that Dean did not provide this court with a transcript of the first trial. Therefore, our review of this matter is limited to the record before us. Additionally, Dean has failed to establish that the trial court's decision was arbitrary, unreasonable, or unconscionable by not reaching a verdict as to the marked lanes violation. Therefore, we conclude that the Double Jeopardy Clause does not prohibit retrial in this case. The first assignment of error is without merit.
 {¶ 16} Dean's second assignment of error states: *Page 5 
 {¶ 17} "The State of Ohio failed to present sufficient evidence as to each and every essential element of the offense of marked lanes."
 {¶ 18} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 19} Dean argues the state failed to submit sufficient evidence on either of the essential elements of R.C. 4511.33(A), which provides, in pertinent part:
 {¶ 20} "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 21} "(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
 {¶ 22} Further, "`[t]he legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside of the lane. Nor, we are quite certain, did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. We are equally certain *Page 6 
that the legislature did not intend to give motorists theoption of staying within the lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable.'"State v. Hale, 11th Dist No. 2004-L-105, 2006-Ohio-133, at ¶ 35. (Citations omitted.)
 {¶ 23} At trial, Sergeant Beaver testified that on the night in question he was in the right-hand lane traveling eastbound on Market Square when he pulled behind Dean's vehicle, which was also traveling eastbound in the right-hand lane. He asserted Dean's vehicle made a right-hand turn, without signaling, onto Route 43. Instead of maintaining the curb lane as he made the right-hand turn, Dean proceeded into the left-hand lane of the two southbound lanes. As Dean's vehicle traveled south, it drifted across the white-marked lane into Sergeant Beaver's lane by approximately two feet. Then, Dean's vehicle made an abrupt left-hand turn onto Russell Drive in front of an oncoming vehicle. After the turn, Dean was driving his vehicle on the wrong side of the road. At this point, Sergeant Beaver effectuated a traffic stop.
 {¶ 24} Based upon the aforementioned testimony of Sergeant Beaver, the trial court could properly find that the elements of R.C. 4511.33 had been met. It was practicable for Dean to stay within a single traffic lane and his failure to do so may have violated the statute. Therefore, Dean's second assignment of error is not well-taken. *Page 7 
 {¶ 25} Since Dean's remaining assignments of error relate to his denial of a fair trial, we consider them together. Specifically, Dean asserts:
 {¶ 26} [3.] "The defense was denied the right to question the weight to be afforded the tests performed, thus denying the defendant/appellant his right to a fair trial.
 {¶ 27} [4.] "The mere conclusions offered by the State's only witness as to the field sobriety tests denied the defendant a fair trial."
 {¶ 28} Dean argues he was denied his "right to question the weight to be afforded the tests that were performed, how they were performed, and whether or not Sergeant Beaver conducted such tests in compliance with NHTSA standards." We agree.
 {¶ 29} "The trial court has broad discretion in the admission and exclusion of evidence." State v. Hymore (1967), 9 Ohio St.2d 122, 128. An appellate court shall not disturb evidentiary rulings absent an abuse of discretion. Id.
 {¶ 30} R.C. 4511.19 provides, in pertinent part:
 {¶ 31} "(D)(4)(b) In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantialcompliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply: *Page 8 
 {¶ 32} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 33} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 34} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shalladmit the testimony or evidence and the trier of fact shall give itwhatever weight the trier of fact considers to be appropriate."
(Emphasis added.)
 {¶ 35} At trial, with respect to Dean's cross-examination of Sergeant Beaver, the trial court stated:
 {¶ 36} "My position was at the time that my belief was since a Motion to Suppress was not filed and a hearing was not held, that the results came in but that there could not be testimony or cross examination as to whether these tests were done in substantial compliance. * * * [t]here cannot be cross examination as to whether these tests were done in substantial compliance and that by not having a Motion to Suppress that that [sic] effectively waived the issue of whether these tests were done in substantial compliance. That is going to be my position today, and as a result I'm going to ask you, Mr. Leneghan, to abide by my decision in terms of your cross examination of the officer."
 {¶ 37} In rendering its decision, the trial court stated it relied upon Defiance v. Kretz (1991), 60 Ohio St.3d 1. In citingKretz, the Second Appellate District has held, *Page 9 
"[a] Crim.R. 12(C)(3) motion to suppress evidence is the proper vehicle to challenge the admissibility of evidence to prove an OMVI charge on a claim that it was not procured pursuant to applicable standards or regulations." State v. Murray, 2d Dist. No. 2002-CA-10, 2002-Ohio-4809, at ¶ 10, citing Defiance v. Kretz, at 5. While we agree with this proposition of law, Dean was not challenging the admissibility of the evidence at trial-he was challenging the reliability of the evidence. As Judge Hoffman stated in his concurring opinion:
 {¶ 38} "I write separately to note that although the issue of admissibility of the field sobriety tests is a question of law, once such evidence is admitted, cross-examination as to how Trooper Maddock conducted such tests is proper. The manner and circumstances under which the tests were conducted present factual issues which affect the weight to be given to the tests." State v. Heavener (June 4, 2001), 5th Dist. No. 2000CA00339, 2001 Ohio App. LEXIS 2784, at *10-11 (Hoffman, J., concurring).
 {¶ 39} Further, in its discussion regarding the constitutionality of R.C. 4511.19 at the trial level, the Supreme Court of Ohio stated "[t]he General Assembly has determined that the tests are sufficiently reliable to be admissible by meeting a clear-and-convincing standard. The potential compromise of reliability caused by the lack of strict compliance can be shown by the defense on cross-examination." State v.Boczar, 113 Ohio St.3d 148, 2007-Ohio-1251, at ¶ 23.
 {¶ 40} In the case sub judice, the prosecutor, on numerous occasions, objected to the questions defense counsel asked Sergeant Beaver on cross-examination relating to his training of current NHTSA standards and whether an officer should ask any questions before performing the field sobriety tests. The trial court sustained the *Page 10 
objections, indicating the questions related to the issue of substantial compliance. Moreover, the trial court prohibited Dean's counsel from asking any questions on cross-examination as to whether the field sobriety tests were done in substantial compliance. A review of the record supports Dean's assertion that the trial court refused to permit the defense any cross-examination of Sergeant Beaver relating to the accuracy of the testing process. Therefore, we agree with Dean that the trial court's limitation of cross-examination in this respect was an abuse of discretion.
 {¶ 41} For the foregoing reasons, Dean's third and fourth assignments of error are well-taken. Dean's first and second assignments of error have no merit. The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed with respect to the conviction of the marked lanes violation. The judgment of the Portage County Municipal Court, Ravenna Division, is reversed with respect to the OVI conviction, and this matter is remanded for a new trial on the OVI charge.
 CYNTHIA WESTCOTT RICE, P.J., MARY JANE TRAPP, J., concur. *Page 1